RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0361P (6th Cir.)
File Name: 00a0361p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY
(98-3399); MICHIGAN
MANUFACTURERS
ASSOCIATION (98-3400),
       *Petitioners,*

    *v.*

CAROL BROWNER, EPA
Administrator; UNITED
STATES ENVIRONMENTAL
PROTECTION AGENCY,
       *Respondents.*

Nos. 98-3399/3400

On Petition for Review of an Order of
the Environmental Protection Agency.
No. 63 FR 8573-0; 40 CFR Part 52.

Argued: June 22, 2000

Decided and Filed: August 24, 2000*

_____

\* This decision was originally issued as an "unpublished decision" filed on August 24, 2000. On September 27, 2000, the court designated the opinion as one recommended for full-text publication.

Before: SILER and CLAY, Circuit Judges; STAFFORD, District Judge.**

_____

## COUNSEL

**ARGUED:** Gary L. Finkbeiner, OFFICE OF THE ATTORNEY GENERAL, NATURAL RESOURCES DIVISION, Lansing, Michigan, Steven C. Kohl, HOWARD & HOWARD, Bloomfield Hills, Michigan, for Petitioners. Martin F. McDermott, UNITED STATES DEPARTMENT OF JUSTICE, ENVIRONMENT & NATURAL RESOURCES DIVISION, Washington, D.C., for Respondent. **ON BRIEF:** Gary L. Finkbeiner, OFFICE OF THE ATTORNEY GENERAL, NATURAL RESOURCES DIVISION, Lansing, Michigan, Steven C. Kohl, HOWARD & HOWARD, Bloomfield Hills, Michigan, Rhonda L. Ross, WARNER, NORCROSS & JUDD, Southfield, Michigan, for Petitioners. Martin F. McDermott, UNITED STATES DEPARTMENT OF JUSTICE, ENVIRONMENT & NATURAL RESOURCES DIVISION, Washington, D.C., Louise C. Gross, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, OFFICE OF REGIONAL COUNSEL, REGION V, Chicago, Illlinois, for Respondent.

_____

## OPINION

_____

SILER, Circuit Judge. Petitioners Michigan Department of Environmental Quality ("MDEQ") and Michigan Manufacturers Association ("Manufacturers") appeal the Environmental Protection Agency's ("EPA") decision under the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q,

_____

\*\* The Honorable William H. Stafford, United States District Judge for the Northern District of Florida, sitting by designation.

disapproving revisions to a state implementation plan ("SIP") submitted by the State of Michigan. The question presented for review is whether the EPA, charged by Congress to determine whether SIPs provide for attainment and maintenance of national ambient air quality standards ("NAAQS"), properly disapproved a Michigan SIP revision that permitted an automatic exemption for a source that violates emissions standards if that violation results from startup, shutdown, or malfunction and meets certain other criteria.[1] As set forth below, we AFFIRM the EPA's decision.

Under the CAA, Congress requires states to obtain and maintain NAAQS promulgated by the EPA. *See Train v. NRDC*, 421 U.S. 60, 64 (1975). Section 110 of the CAA focuses on SIPs and ensures that levels of certain "criteria" pollutants in the ambient air do not exceed specified healthful levels. For each criteria pollutant, EPA promulgates NAAQS sufficient to protect the public health with an adequate margin of safety and to protect the public welfare. *See* 42 U.S.C. § 7409(b).

For each NAAQS, states are required to develop a SIP providing for "implementation, maintenance and enforcement" of the NAAQS within the states' borders. *See* 42 U.S.C. § 7410(a)(2)(C). Although the states are given broad authority to design programs, the EPA has the final authority to determine whether a SIP meets the requirements of the CAA. EPA must disapprove a state's proposed SIP that would interfere with any requirement concerning the state's attainment and maintenance of NAAQS for certain airborne pollutants. *See* CAA § 101(b)(1); 42 U.S.C. § 7401(b).

---

[1]Petitioners also argued that the EPA approved similar rules in other states and the EPA's rulemaking violates the Regulatory Flexibility Act, 5 U.S.C. §§ 601-612 (2000). However, petitioners failed to sufficiently raise these issues during the comment period and thus have waived them for purposes of appellate review.

Pursuant to its statutory responsibilities, EPA has issued regulations and guidance interpreting and clarifying the SIP requirements specified under section 110. Since 1977, the EPA has interpreted all excess emissions as "violations" of the applicable standards for which "notices of violations" could, but not necessarily would, issue. 42 Fed. Reg. 21,472 (April 27, 1977). Under this "enforcement discretion" approach, a regulator retains discretion to bring an enforcement action following a violation, depending on the surrounding circumstances. *Id.*

The EPA elaborated on this approach in 1982 and 1983, when Kathleen Bennett, then EPA Assistant Administrator for Air, Noise and Radiation, issued two memoranda explaining the agency's policy on excess emissions. Together, the memoranda explain that excess emissions must be deemed violations because "any emissions above the allowable [standard] may cause or contribute to violations of the national ambient air quality standards." But a source exceeding the amount allowed under a SIP would not necessarily be assessed a penalty if the exceedance was due to a malfunction, provided that the state required the "commencement of a proceeding to notify the source of its violation and to determine whether enforcement action should be undertaken." With regard to excess emissions during startup and shutdown, the Bennett Memoranda noted that because such occurrences are part of a source's normal operations, they "should be accounted for in the planning, design and implementation of operating procedures" for the source's process and control equipment.

In 1996, MDEQ submitted a revision of Michigan's SIP to the EPA for review and approval. *See* 42 U.S.C. § 7410. The request included proposed Rules 912, 913 and 914 regulating the startup, shutdown and malfunction ("SSM") of air emission sources. Rule 912 requires that a source be operated "consistent with good air pollution control practices for minimizing emissions during periods of abnormal conditions, startup, shutdown and malfunction" and contains notice and

reporting requirements during such episodes. However, Rules 913 and 914 permit excess emissions resulting from SSM if certain notice, reporting and other requirements are met. Although petitioners contend that "Rules 913 and 914 do not provide automatic exemptions from an enforcement action by the state," the proposed rules fail to authorize the state regulatory agency, MDEQ, to review and require revisions to a source's written emission minimization plan for normal startups or shutdowns.

In 1997, the EPA proposed to disapprove Michigan's SIP revision containing the SSM rules. The EPA found that the rules violated CAA requirements because the state regulatory agency was not authorized to review and require revisions to a source's plan and the rules permitted automatic exemptions for violations of emission standards, contrary to EPA policy. Further, the EPA found that proposed Rule 913(d)'s definition of "malfunction" was too broad because it failed to limit malfunctions to failures that are "infrequent" and "not reasonably preventable." The EPA also stated that Michigan's air pollution control bypass provisions, embodied in Rules 913(3)(b) and 914(4)(b), were broader than permitted by the Act. Finally, the alternate emission limitations for startup and shutdowns in Rule 914(4)(d) could impermissibly allow relaxations of CAA requirements, including "new source review" limitations, new source performance standards, and toxic requirements. In its final action in 1998, the EPA disapproved the submitted rules based on the above reasons.

The EPA's disapproval of Michigan's SIP revision is final agency action subject to judicial review in the courts of appeals under CAA section 307(b)(1). *See* 42 U.S.C. § 7607(b)(1). Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), this court reviews the EPA's interpretation of the CAA under a two-step process: first, "if Congress has directly spoken to the precise question at issue... the court... must give effect to the unambiguously expressed intent of Congress."

*Id.* Second, if Congress has been silent or ambiguous about the "precise question at issue," then a reviewing court must defer to the agency's statutory interpretation if it is "reasonable." *Id.* at 842-43. Further, this court is "not [to] substitute its judgment for that of the agency," *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983), but rather shows great deference to the statutory interpretation given by the EPA and the officers charged with the CAA's administration. *See Navistar Int'l Transp. Corp. v. EPA*, 941 F.2d 1339, 1341-42 (6th Cir. 1991).

Petitioners contend that the EPA wrongfully interpreted section 110 of the CAA as requiring that all excess emissions due to SSM are violations of the CAA. Further, petitioners claim that CAA unequivocally grants states the primary responsibility for regulating air emissions, and that the EPA cannot mandate specific emission limitations by disapproving otherwise appropriate state rules. They claim the proposed rules are appropriate because they administer the air program through specifying standards of performance and other requirements.

The Supreme Court explained the review process as follows:

Under § 110(a)(2), the Agency is required to approve a state plan which provides for the timely attainment and subsequent maintenance of ambient air standards, and which also satisfies that section's general requirements. The Act gives the Agency no authority to question the wisdom of a State's choices of emission limitations if they are part of a plan which satisfies the standards of § 110(a)(2).... Thus, so long as the ultimate effect of a State's choice of emission limitations is compliance with the national standards for ambient air, the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation.

*Train*, 421 U.S. at 79. Although the CAA grants states considerable latitude, it "nonetheless subjects the states to strict minimum compliance requirements," adherence with which must be determined by the EPA. *Union Electric Co. v. EPA*, 427 U.S. 246, 256-57 (1976). The CAA prohibits the EPA from approving a revision that would interfere with attainment or any other applicable CAA requirement. *See* 42 U.S.C. § 7410(k)(3) and (l). The EPA has issued the Bennett Memoranda and stated that it interprets the CAA as disallowing a broad exclusion from source compliance with emission limitations in SIPs during SSM periods. Under the EPA's statutory interpretation, such an exclusion is inconsistent with the purpose of the CAA's criteria pollutant provisions, which mandate that the NAAQS be attained and maintained. Thus, the EPA's deference to a state is conditioned on the state's submission of a plan "which satisfies the standards of § 110(a)(2)" and which includes emission limitations that result in compliance with the NAAQS. *Train*, 421 U.S. at 79.

Given the deference we owe to the EPA's decision, we cannot say that EPA's interpretation of section 110 of the CAA through the Bennett Memoranda is unreasonable. Under that interpretation, SIPs cannot provide broad exclusions from compliance with emission limitations during SSM periods. Michigan's proposed rules jeopardize ambient air quality, the EPA found, because the rules excuse compliance from applicable emission limitations and provide no means for the state to enforce the NAAQS. Petitioners' reliance on *Bethlehem Steel v. Gorsuch*, 742 F.2d 1028 (7th Cir. 1984), and *Florida Power and Light Co. v. Costle*, 650 F.2d 579 (5th Cir. 1981), is therefore misplaced. In *Bethlehem Steel*, the court ruled the EPA could not approve part of a state's proposed SIP while disapproving another in a way that made the regulation incorporated into the SIP more stringent than the state intended. That is not the case here. Further, in *Florida Power*, that court held that the EPA could not require the state to convert its state limitations on relief into a federally enforceable SIP revision. Here the EPA

disapproved Michigan's entire SIP revision based upon its conclusion that the proposed rules eliminate the possibility of enforcement by allowing automatic exemptions for excess emissions resulting from SSM if the source meets certain other criteria. Although petitioners argue that "the CAA does not specify any SSM requirements under Section 110," this argument ignores the EPA's Bennett Memoranda which clearly state that the EPA will not approve state rules that excuse excess emissions during SSM.

Further, petitioners fail to offer evidence that Michigan's proposed rules will not interfere with the attainment and maintenance of the NAAQS. The record reflects no analysis of the rules' impact on NAAQS because the state did not submit such a demonstration. In addition, although the CAA gives states primary responsibility to develop SIPs to maintain NAAQS, Congress requires the EPA to determine whether a SIP meets the requirements of the Act. The EPA reasonably concluded that Michigan's proposed SIP revision did not meet the requirements of the CAA.

AFFIRMED.